# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        Case No. 11-20551

FREDERICK TILL JACKSON, SR.,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE**

Defendant Frederick Till Jackson, Sr., pleaded guilty to conspiracy to distribute and possess with intent to distribute controlled substances, 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C). (ECF No. 1439, PageID.11613.) On March 10, 2016, the court sentenced him to 141 months imprisonment. (*Id.*, PageID.11614.) Defendant has served approximately fifty-three months of his sentence. (ECF No. 1883-2, PageID.18871.) His projected date of release is in January 2027, assuming good behavior. (*Id.*, PageID.18872.)

Defendant moves for a reduction in sentence. (ECF No. 1873.) He argues that the health risks presented by the Coronavirus Disease ("COVID-19") while incarcerated at USP Canaan justify his immediate release. The matter has been thoroughly briefed. (ECF Nos. 1883, 1890, 1896, 1897.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). Defendant's motion will be denied.

Under the federal compassionate release statute, the court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a

reduction." 18 U.S.C. § 3582(c)(1)(A). The court must also weigh the sentencing factors provided under 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

A motion requesting a prisoner's compassionate release may be filed either by the Bureau of Prisons ("BOP") or by the prisoner himself. 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit held recently in *United States v. Jones*, 980 F.3d 1098, 1110-11 (6th Cir. 2020), that when a prisoner moves for compassionate release himself there is no "applicable policy statement[] issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Thus, the requirement in § 3582(c)(1)(A) that a sentence reduction be "consistent with [a] policy statement[]" does not apply to compassionate release analysis, and courts are to ignore it. *Jones*, 980 F.3d at 1111. A prisoner seeking compassionate release must still present "extraordinary and compelling" circumstances and must have § 3553(a)'s sentencing factors that weigh in his or her favor. 18 U.S.C. § 3582(c)(1)(A); *see Jones*, 980 F.3d at 1108, 1111 (holding that a court has "full discretion to define 'extraordinary and compelling'" and must also "determine whether, in its discretion, [a] reduction . . . is warranted" under § 3553(a)).

The court will assume for purposes of Defendant's motion that he has presented extraordinary and compelling circumstances. *See* 18 U.S.C. § 3582(c)(1)(A). However, upon a review of § 3553(a) sentencing factors, the court concludes early release is not warranted.

Title 18 U.S.C. § 3553(a) provides that "[a] court, in determining the particular sentence to be imposed, shall consider[:]"

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established . . .

(5) any pertinent policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

"[D]istrict courts have 'broad discretion to determine what sentence will serve § 3553(a)'s statutory objectives." *United States v. Kincaid*, 805 F. App'x 394, 394 (6th Cir. 2020) (quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009)) (affirming a district court's denial of compassionate release after consideration of § 3553(a) sentencing factors); *see also United States v. Allen*, 819 F. App'x 418, 418 (quotation removed) ("In a compassionate release proceeding, as at sentencing, the district court is best situated to balance the § 3553(a) factors."). "[A] defendant's disagreement with how the district court balanced the § 3553(a) factors in denying compassionate release is not a sufficient ground for reversal." *United States v. Austin*, 825 F. App'x 324, 327 (6th Cir. 2020) (quotations removed).

3

**"[T]he nature and circumstances of the offense and the history and characteristics of the defendant."** 18 U.S.C. § 3553(a)(1). Defendant has a long history of criminal conduct and close links to illegal narcotics distribution. He was first convicted of drug trafficking in the early 1990s. (ECF No. 1883, PageID.18850-51.) In October 1993, Defendant was paroled but soon violated court-ordered conditions by possessing illegal drugs. (*Id.*) Two months after he violated parole, and while on court-ordered supervision, Defendant committed a second drug trafficking offense. (*Id.*) Three years after sentencing for this second offense, Defendant was caught in another drug trafficking related matter and was convicted of being a habitual offender. (*Id.*) Soon after this conviction, Defendant was convicted for a third time of drug trafficking; he committed the crime with his son-in-law. (*Id.*)

Despite having numerous criminal convictions, including three convictions for drug trafficking, Defendant worked with his son-in-law, siblings, children, and nephews to establish a drug trafficking ring in Portsmouth, Ohio. (*Id.*, PageID.18842.) He used government benefit systems, including Medicare and Medicaid, to acquire opioids for distribution onto the black market. (*Id.*) Defendant was on probation for a prior drug trafficking offense when he committed this instant offense. (*Id.*, PageID.18852.)

While incarcerated for the instant offense, Defendant has been disciplined twice. The first was for insolence toward a prison staff member and the second for possessing contraband (a cell phone). (ECF No. 1883-4, PageID.18874.) For his second offense, Defendant ran after being caught. (ECF No.1884-1, PageID.18886.)

In all, Defendant has an extensive track record of engaging in serious criminal conduct. He has repeatedly facilitated the spread of deadly and addictive narcotics,

despite receiving numerous court-imposed sanctions. Defendant has also shown himself to be well-organized and effective at operating criminal enterprises. The nature of Defendant's offense and his criminal history do not support the sentence modification Defendant seeks, which would substantially reduce his term of imprisonment from 141 months to fifty-three months. 18 U.S.C. § 3553(a)(1); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."** 18 U.S.C. § 3553(a)(2)(A). Defendant has engaged in serious criminal behavior for decades. He has shown flagrant disregard for the law, as well as for conditions of court-ordered supervision. Several of his drug trafficking felonies were committed while on parole or probation. (ECF No. 1883, PageID.18850-52.) Release after serving only fifty-three months of his sentence would not adequately reflect the seriousness of Defendant's criminal conduct. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A). Nor would it promote respect for the law, something Defendant has noticeably lacked over the course of his adult life. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A). Finally, early release would not afford just punishment for Defendant's serial lawbreaking. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he need for the sentence imposed . . . to afford adequate deterrence to criminal conduct."** 18 U.S.C. § 3553(a)(2)(B). Defendant has been convicted, and punished, for numerous drug-related felonies. Prior convictions did nothing to stop Defendant from breaking the law. In fact, over time, Defendant became more sophisticated and eventually helped operate a drug ring in Portsmouth, Ohio. (ECF No. 1883, PageID.18842.) Upon release, or placement on court-ordered supervision,

Defendant has returned to his old habits and criminal livelihood. After serving less than half of his sentence, the court finds immediate release woefully inadequate to ensure proper deterrence, both for Defendant and others who may consider replicating his life choices.[1] 18 U.S.C. § 3553(a)(2)(B); 18 U.S.C. § 3582(c)(1)(A). Deterrence is especially important for Defendant. He has a long criminal history and is fifty-nine years old. If he does not refrain from criminal behavior and recommits upon release, he may find himself in prison for the remainder of his natural life.

**"[T]he need for the sentence imposed . . . to protect the public from further crimes of the defendant."** 18 U.S.C. § 3553(a)(2)(C). Defendant has shown himself willing and able to engage in complex and dangerous criminal activities, despite having prior convictions and despite the presence of conditions of supervised release. The court believes that if Defendant is released at this time, there is a real possibility that he would commit more crimes, specifically by trafficking drugs. Distribution of illegal narcotics continues to present a significant risk to the community's health. Defendant's immediate release would not adequately ensure the protection of the public. 18 U.S.C. § 3553(a)(2)(C); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he sentencing range established."** 18 U.S.C. § 3553(a)(4). When Defendant was sentenced, the advisory guideline range was 235 to 293 months

---

[1] The court notes that on April 9, 2020, the U.S. Sentencing Commission issued a detailed report on incarceration and recidivism. United States Sentencing Commission, *Length of Incarceration and Recidivism* (2020). Analyzing data on thousands of federal prisoners, the Commission "consistently found that incarceration lengths of more than 120 months had a deterrent effect" while incarceration of sixty months or less had little to no deterrent effect. *Id.* at 4. Given that Defendant has served fifty-three months in prison, this study bolsters the court's finding that its original sentence would more likely provide deterrence from further crime, and that the early release as proposed would not.

imprisonment. (ECF No. 1913, PageID.19671-72.) He fell within the highest criminal history category, category VI. (*Id.*) Nonetheless, the court sentenced Defendant to 141 months imprisonment, well below the lower bound of the guideline range. (ECF No. 1439, PageID.11614.) Defendant now seeks to reduce his sentence by over 50%, ensuring a final term of imprisonment of fifty-three months. The established sentencing range counsels strongly against this result. 18 U.S.C. § 3553(a)(4); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."** 18 U.S.C. § 3553(a)(2)(D). Defendant has a history of heart issues. In 2019, medical professionals at the BOP discovered he had blockage in his coronary artery, and Defendant underwent surgery and received stents. (ECF No. 18841-1, PageID.18903.) His heart condition is being successfully monitored, and Defendant receives regular checkups and prescriptions. (*See, e.g.*, ECF No. 1884-2, PageID.18937-38, 18952.) Defendant also has hypertension (high blood pressure). (*Id.*, PageID.18937-38.)

For many years prior to incarceration, Defendant was involved in dangerous criminal activity. He distributed illegal narcotics as his choice of trade for decades. Possessing large amounts of drugs and hard currency procured from drug sales poses serious risks of violence and bodily harm. While in prison, Defendant is separated from his prior lifestyle. In conjunction with the medical services the federal prison system provides him, Defendant's continued incarceration supports his health and wellbeing.

7

The existence of COVID-19 by itself does not justify Defendant's release. The BOP has taken countermeasures to mitigate the spread of COVID-19. All newly arriving inmates are tested and placed in quarantine. *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Dec. 29, 2020). Prisoners cannot leave quarantine until they test negative. *Id.* Symptomatic inmates are isolated, tested, and treated. *Id.*; Federal Bureau of Prisons, U.S. Department of Justice, *Correcting Myths and Misinformation About BOP and COVID-19* (2020). The location of Defendant's confinement, USP Canaan, has only five active cases of COVID-19 among prisoners. *COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 29, 2020). The prison houses 1,139 inmates. *USP Canaan*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/caa/ (last visited Dec. 29, 2020).

Furthermore, the court has few assurances that early release will reduce Defendant's chances of contracting COVID-19 or increase his chances of successful recovery, if he were to contract the disease. Given his long history of failing to comply with basic rules and societal expectations, even when violations carry significant jailtime, release may not substantially reduce his risk of exposure. *See How to Protect Yourself & Others*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited Dec. 29, 2020) (suggesting voluntary precautions to mitigate the spread of COVID-19). In addition, the court has little information or assurance as to the healthcare Defendant would receive in free society. Defendant may well have *less* monitoring and *reduced* access to quality care.

To release Defendant, the court would need to speculate as to whether he will contract COVID-19 in prison, whether he will develop serious symptoms, and whether his health, and access to quality healthcare, will improve upon release. Ultimately, the risks of COVID-19 to Defendant while in prison do not outweigh the several § 3553(a) factors that weigh in favor of continued incarceration. Defendant's request for compassionate release will be denied. Accordingly,

IT IS ORDERED that Defendant's "Motion to Reduce Sentence" (ECF No. 1873) is DENIED.

      s/Robert H. Cleland      /
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: December 30, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 30, 2020, by electronic and/or ordinary mail.

      s/Lisa Wagner      /
      Case Manager and Deputy Clerk
      (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\11-20551.JACKSON.MotiontoReduceSentence.RMK.docx